# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A MOTOROLA MOTO G PLAY CELLULAR TELEPHONE<br>CURRENTLY LOCATED WITHIN THE LOCKED GUN<br>VAULT INSIDE DUSM ANDREW SMITH'S LOCKED<br>GOVERNMENT-ISSUED POLICE CAR | )<br>)<br>)<br>)<br>)<br>)    Case No. 1: 23 M J 353 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Middle _____ District of _____ North Carolina _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 751(a) | Escape |
| 21 U.S.C. § 841 | Possession with Intent to Distribute Cocaine |

The application is based on these facts:

See Attached Affidavit of Deputy United States Marshal Andrew Smith

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Andrew Smith
_____
*Applicant's signature*

Andrew Smith, Deputy U.S. Marshal
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: 08/15/23

_____
*Judge's signature*

City and state: Greensboro, NC

United States Magistrate Judge L. Patrick Auld
_____
*Printed name and title*

## ATTACHMENT A

The property to be searched:

Motorola Moto G Play Cellular Telephone (Navy in color), serial number unknown due to the device not being powered on, hereinafter the "Device," more particularly described in Attachment A hereto. Photographs of the front and back of the Device are shown below. The Device is currently located in the Middle District of North Carolina in the locked gun vault inside DUSM Smith's locked government-issued police car to which only he has access.



This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

2

## ATTACHMENT B

1. The following materials on the Device described in Attachment A which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, and property designed or intended for use or which is or has been used as the means of committing the criminal offense, namely violations of 18 U.S.C. § 751(a) and 21 U.S.C. § 841 since January 11, 2023, in the form of the following:

    a. lists of Peoples' customers and their identifying information;

    b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. information referencing or revealing sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. information recording Peoples' schedule or travel from January 11, 2023 to the present;

    e. bank records, checks, credit card bills, account information, and other financial records or third-party transaction information maintained on the Device that shows narcotics transactions or payments; and

2.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the United States Marshals Service may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| IN THE MATTER OF THE SEARCH OF A MOTOROLA MOTO G PLAY CELLULAR TELEPHONE CURRENTLY LOCATED WITHIN THE LOCKED GUN VAULT INSIDE DUSM ANDREW SMITH'S LOCKED GOVERNMENT-ISSUED POLICE CAR | Case No. 1:23 MJ 353 |
| --- | --- |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Andrew Smith, being duly sworn, hereby affirm and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession within the Middle District of North Carolina, and the extraction from that property of electronically stored information described in Attachment B.

2.    I am a Deputy United States Marshal ("DUSM") with the United States Marshals Service ("USMS"). Thus, I am a "Federal Law Enforcement Officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General. As such, I am empowered

to conduct investigations of violations of federal law and to request a search warrant.

3.     I have been a DUSM since May 2020.    Previously, I was employed as a North Carolina State Trooper with the North Carolina State Highway Patrol ("NCSHP") from 2009 to 2020. I attended nearly seven months of training and graduated from the 126th Basic School as the Honor Graduate. As a Trooper, I was responsible for the enforcement of North Carolina state law and was assigned to the Federal Bureau of Investigations ("FBI") Safe Streets Gang Task Force as a Task Force Officer. As an FBI Task Force Officer, I was responsible for violent crime and drug investigations. After leaving the NCSHP, I attended and graduated from the Basic Deputy United States Marshal – Integrated course at the Federal Law Enforcement Training facility in Glynco, Georgia. I was then assigned to the Middle District of North Carolina – Greensboro.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Devon Antonio Peoples escaped from custody, in violation of 18 U.S.C. § 751(a), and, while out of custody, possessed with intent to distribute cocaine, in violation of 21 U.S.C. § 841, in the Middle District of North Carolina.

2

5.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.   This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.    The property to be searched:

a.    Motorola Moto G Play Cellular Telephone (Navy in color), serial number unknown due to the device not being powered on, hereinafter the "Device," more particularly described in Attachment A hereto.

7.    The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

### PROBABLE CAUSE

8.    On January 11, 2023, Peoples left from and failed to return to the Community Corrections Center at Dismas Charities RRC located at 307 N. Church Street, Greensboro, North Carolina.   The USMS began searching for Peoples, but he successfully evaded capture for months.

9.    On May 30, 2023, a grand jury in the Middle District of North

3

Carolina returned an indictment charging Peoples with one count of escape from custody in violation of 18 U.S.C. § 751(a) (1:23CR200-1). On May 31, 2023, a warrant for his arrest was issued.

10.    On July 7, 2023, the Honorable Joi Elizabeth Peake issued an order for a pen register trap and trace and a tracking warrant for prospective location information for a Facebook account believed to be Peoples' (23mj287), as well as a search warrant for historical location information for the same Facebook account (23mj288).

11.    After DUSM Matthew Little received those returns, the Court issued an order pursuant to 18 U.S.C. § 2703(d) for subscriber information. That information led the USMS to Peoples' whereabouts, nearly eight months after his escape.

12.    On August 1, 2023, members of the United States Marshals Carolina Regional Fugitive Task Force and I arrested Peoples after he exited a storefront located at 1485 New Walkertown Rd., Winston-Salem, North Carolina. As members of the arrest team moved in to effect his arrest, Peoples attempted to flee on foot. He was ultimately taken into custody after a brief foot chase.

13.    The arrest team searched Peoples incident to his arrest and found a razor blade concealed within his right sock.

4

14.     Further search of his person revealed approximately 17 grams of a white substance in clear plastic bags, which later field-tested positive for cocaine, located in the crotch area of Peoples' pants. In the front right pocket of the basketball shorts that Peoples was wearing underneath the pants was $1,135. The money was sorted from low to high denominations ranging from $5s, $10s, $20s, $50s, and $100s. In my training and experience, 17 grams of either powder cocaine or crack cocaine is far in excess of the amount a typical user would possess. Furthermore, packaging the drugs in more than one bag and sorting money in this way are consistent with drug distribution in my experience.

15.     Peoples was also in possession of a cellular phone at the time he began to flee. The device was ultimately found beside Peoples on the ground at the time of his arrest. This device is the target Device described in Attachment A.

16.     After Peoples' arrest, within the intake area of the Guilford County Jail, I asked Peoples, "Who do you want me to contact to come get your property?" He told me, "You can just throw it away." I inquired further about throwing away Peoples' cell phone to which Peoples replied, "Just throw it away; I can get another one." Therefore, although Peoples can no longer assert a privacy interest in the Device, out of an abundance of caution

5

to ensure compliance with the Fourth Amendment and other applicable laws, I am applying for this search warrant for the contents of the Device.

17.     The Device is currently stored within the locked gun vault inside my locked government-issued police car in the Middle District of North Carolina. I am the only DUSM who is assigned to drive this issued vehicle and have the only issued key. The gun vault in which the phone is stored is also equipped with a mechanical lock. In my training and experience, I know that the Device has been stored in a manner in which its contents are in substantially the same state as they were when the Device first came into the possession of the USMS.

18.     Peoples' criminal history includes one conviction for possession of cocaine (1999) and three convictions for possession with intent to sell/distribute cocaine (1997, 2000, 2018).     As noted above, Peoples was arrested on August 1 with approximately 17 grams of cocaine and $1,135 in his possession.

19.     Through training and experience, I know the Device is a Motorola Moto G Play.     A Motorola wireless device, otherwise known as cellular smartphone, features an advanced mobile operating system which combines features of a personal computer operating system with other features useful for mobile or handheld use. Smartphones, which are usually pocket-sized,

6

typically combine the features of a mobile phone, such as the abilities to place and receive voice calls, create and receive text messages, videos and images with those of other popular digital mobile devices. They also transfer and receive data to digital assistants (PDAs), such as an event calendar, media player, video games, and Global Positioning System (GPS.)

20.     I know that it is common for persons involved in criminal activity to use their cellular smartphone device to communicate with other involved associates prior to, during, and after the commission of a crime. Frequently persons involved in criminal activity often glorify, boast, and publicize their illegal activities, for many reasons including notoriety and the intimidation of others. This is done through pictures, video, multimedia, text messages, incoming and outgoing phone calls, and the vast variety of mobile applications available and accessed directly through the smartphone device. Modern smartphones are of great value for both lawful and unlawful purposes as they are an insistent part of daily life.

21.     Furthermore, it is common for individuals to use their cellular smartphones to access the internet. Access to the internet via a cellular device typically creates a log of items which are viewed and searched on the internet and as such, creates a recorded history. It is further known that this history is rarely completely deleted.   A variety of third-party software

7

components called "apps" are reliant on internet access for their functionality. Popular and commonly used apps such as Facebook, Instagram, and Twitter offer a range of tools for managing detailed information about all aspects of a person's life though installation, storage, and use of the device.

22. Drug traffickers commonly use cellular telephones to communicate with other members of their organization. In fact, cellular telephones are considered a "tool of the trade," as drug traffickers often have multiple cellular telephones to give or receive instructions as they complete drug transactions.

23. Drug traffickers are aware that it is much more difficult for investigators to identify and link a specific cellular telephone number to them as opposed to a fixed or land line telephone. It is also common for drug traffickers to utilize cellular telephones registered in nominee names. This enables them to conduct illegal drug trafficking activities by telephone, with less of a chance of being identified.

24. Drug traffickers take, or cause to be taken, photographs or videos of themselves and their associates in the drug trade, property derived from the distribution of narcotics, and their products, and such media is often kept in their cellular telephones.

8

25.  Drug traffickers commonly utilize cellular telephones equipped with SMS text messaging and electronic mail messaging to communicate with other drug traffickers.  These features are frequently used to prevent being identified by their voice, therefore further avoiding detection by law enforcement.

26.  Therefore, it is probable that this Device contains evidence of Peoples' escape and possession with intent to distribute cocaine.

27.  Since Peoples' arrest on August 1, 2023, DUSM Little has continued to work locating and arresting other known fugitives within the Middle District of North Carolina. On August 2, 2023, he worked a case in Woodleaf, North Carolina.  On August 3, 2023, he was called back to the Federal Building in Winston-Salem due to a security breach involving a loaded firearm. During the week of August 7, 2023, he was actively working a case in Hamlet, North Carolina.

28.  Since Peoples' arrest on August 1, 2023, I have been responsible, primarily, for continued court and prisoner operations in the Middle District of North Carolina.  DUSMs in the district have been detailed out of state, requiring the remaining deputies in the district to take on additional responsibilities.  I also continued assisting with the location and

9

apprehension of fugitives, including multiple cases in Durham, North Carolina.

**TECHNICAL TERMS**

29. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and

10

downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory

11

cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the

12

antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-

13

255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

30. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at https://www.motorola.com/us/smartphones-moto-g-play-gen-2/p?skuId=856, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience,

14

examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

32.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is

15

analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is

16

necessary to establish that a particular thing is not present on a storage medium.

33.    *Nature of examination.*    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

34.    *Manner of execution.*    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

17

## **CONCLUSION**

35.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Andrew Smith

Andrew Smith
Deputy U.S. Marshal
United States Marshals Service

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

UNITED STATES MAGISTRATE JUDGE

18